IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

VICTORIA McCLINTOCK,

        Plaintiff,

v.                              **CIVIL ACTION NO. 5:25-CV-181**
                                                 Judge Bailey

MARSHALL COUNTY COMMISSION,

        Defendant.

## ORDER

Pending before this Court is Defendant Marshall County Commission's Motion for Summary Judgment [Doc. 19], filed June 15, 2026.  Plaintiff filed a Memorandum in Opposition [Doc. 20] on June 24, 2026.  Defendant filed a Reply [Doc. 21] on July 1, 2026. For the reasons that follow, this Court will grant in part and deny in part defendant's Motion.

## BACKGROUND

This case arises out of the termination of plaintiff from her role in an accounts payable position for the Marshall County Clerk's Office.  On September 13, 2010, defendant, by and through its agent, Jan Pest, defendant's County Clerk, hired plaintiff as a deputy clerk. [Doc. 1-1 at ¶ 5; Doc. 19-2 at 9:4–12:7].  As a deputy clerk, plaintiff was responsible, *inter alia*, for paying bills and vendor invoices, issuing W-9s, and managing the Purchasing Card ("P-Card") for the office. *See, e.g.*, [Doc. 19-2 at 34:13–15; 44:17–24; 72:6–15].

1

In November 2022, Connie Howard, plaintiff's coworker, was elected County Clerk over Melanie Madden, another coworker. [Doc. 1-1 at ¶ 12]. The office was divided between employees who had supported Ms. Howard and those who had supported Ms. Madden. [Id. at ¶ 11; Doc. 19-3 at 41:6–42:5; Doc. 19-8 at 19–22]. Plaintiff supported Ms. Madden and when Ms. Howard defeated Ms. Madden, plaintiff feared retaliation from Ms. Howard. [Doc. 1-1 at ¶¶ 11–12].

Over the course of the next eighteen (18) months, plaintiff raised several reports about Ms. Howard's conduct toward her and other employees in the office. [Id. at ¶ 13]. One of Ms. Howard's first acts was to appoint her sister, Glena Powell, as Chief Deputy Clerk. [Id. at ¶ 14; Doc. 19-3 at 95:8–13].

Plaintiff anonymously reported Ms. Powell's appointment as a potential Ethics Act violation to the West Virginia Ethics Commission on February 17, 2023. [Doc. 19-2 at 97:8–18; Doc. 19-8 at 2–3]. On December 10, 2024, John Roush, Interim General Counsel for the West Virginia Ethics Commission, emailed Ms. Howard and stated that the matter involving employment of Ms. Howard's sister as Chief Deputy Clerk violated West Virginia Code R. § 158-6-3, the nepotism regulation, specifically the provisions prohibiting a public official from directly supervising a relative (§ 3.6.2) and from participating in employment decisions affecting a relative without an independent third party (§ 3.6.1). See [Doc. 19-4]. The Ethics Commission closed the investigation for a few reasons, one specifically being Ms. Powell had passed away. [Id. at 2].

Plaintiff acknowledges that Ms. Howard was not directly told who filed the Ethics Complaint. [Doc. 19-2 at 98:6–22]. Ms. Howard believed the Ethics Complaint was filed

2

by Jan Pest, the former clerk, Denise Doyle, a retired employee, or Ms. Madden, whom Ms. Howard beat in the election.  [Doc. 19-3 at 96:20–97:25].

On the one hand, plaintiff made numerous, additional reports—formally and informally—of conduct she believed constituted wrongdoing or waste within the meaning of the West Virginia Whistleblower Act:

- Plaintiff made multiple reports to County Administrator Betsy Frohnapfel and to Commissioner Scott Varner about Eric Buzzard's repeated failure to follow P-Card guidelines.  [Doc. 19-8 at 7];

- Plaintiff reported concerns about payroll errors, IRS payments being late, and retirement contributions not being made on time. [Id. at 12];

- Plaintiff reported concerns regarding the improper budget revision submitted by Ms. Howard seeking to reimburse a new hire (Toni Chieffalo) for COBRA payments from a prior employer, when the County Commission had actually tabled, not approved, that line item.  [Id. at 11];

- Plaintiff reported concerns about minors (some as young as ten (10) years old) being used as paid poll workers in potentially unsafe conditions on election night.  [Id. at 21].

On the other hand, defendant states through Ms. Howard's tenure as Clerk, plaintiff engaged in disruptive and toxic behavior in the workplace, including, but not limited to, calling employees on vacation to undermine Ms. Howard's moving Sondra Elson to office manager, retrieving Ms. Powell's divorce pleadings and sharing them with the office, and playing a police recording relating to Ms. Howard's bipolar granddaughter for the office. [Doc. 19-3 at 90:2–92:2].

On July 3, 2024, plaintiff received a memo to write a check payable to the magistrate court for $12,473.39. [Doc. 19-5]. Plaintiff instead wrote a check for $291,595.65, the balance due figure that appeared on the same underlying document. [Id. at 2]. At her deposition, plaintiff acknowledged the error and explained how it occurred by reference to the way the underlying document was formatted. [Doc. 19-2 at 81:21–83:16]. The check was ultimately caught by Amy Carmichael, the Chief Tax Deputy, and was voided and rewritten. [Doc. 19-2 at 83:17–84:14; Doc. 19-5].

On August 1, 2024, Ms. Howard was informed by Ms. Carmichael about the erroneous $291,595.65 check issue. [Doc. 19-3 at 78:5–18]. Ms. Howard also reviewed plaintiff's time sheet and states plaintiff claimed she worked on a day where she was not present. [Id. at 102:6–20; Doc. 19-6].[1] In her deposition, Ms. Howard states plaintiff had already been warned about numerous errors on her time sheets. [Doc. 19-3 at 100:21–102:20]. Ms. Howard further states she was "very upset over the dishonesty on the time sheets" and plaintiff "was the only one in the office that [Ms. Howard] had to pull in periodically, go over the time sheets and make [plaintiff] change them." [Id. at 89:9–12].

Also on August 1, 2024, Ms. Howard decided to terminate plaintiff. *See* [Doc. 19-7].

Plaintiff filed her Complaint in the Circuit Court of Marshall County on July 17, 2025. [Doc. 1-1]. Defendant removed to this Court on August 15, 2025. [Doc. 1]. In the Complaint, plaintiff alleges two (2) counts: (1) Violation of West Virginia Whistle-Blower Law; and (2) Violation of 42 U.S.C. § 1983 (First Amendment Rights). *See* [Doc. 1-1 at 4–6].

---

[1]Ms. Howard confirmed with staff and video evidence that plaintiff was not present on that day. [Doc. 19-3 at 102:17–20].

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.

5

Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## DISCUSSION

### I.    Violation of West Virginia Whistle-Blower Law

In the Complaint, plaintiff alleges that defendant violated the West Virginia Whistle-Blower Law because it "knew or reasonably should have known that she had made multiple, good faith reports of wrongdoing or waste in its office, including, and not limited to, an employee bullying or otherwise creating a hostile workplace for other employees, and the county clerk's abusing her authority and her intent to allow an employee to sign checks in Ms. Howard's absence." [Doc. 1-1 at ¶ 22]. Plaintiff further alleges that defendant terminated her employment on the same day she made her final report of wrongdoing or waste. [Id. at ¶ 23]. According to plaintiff, her termination was in retaliation for her good faith reports concerning defendant's alleged wrongdoing or waste. [Id. at ¶ 24].

6

In the Motion, defendant argues that plaintiff cannot establish a claim under the West Virginia Whistle-Blower Act because she has failed to produce evidence satisfying the elements of a *prima facie* case. *See* [Doc. 19-1 at 14–20]. Specifically, defendant contends that plaintiff's alleged whistleblowing activities consisted of complaints regarding Ms. Howard's promotion of her sister to Deputy Clerk, as well as various workplace grievances, including staffing issues, payroll errors, employee conduct, and other office matters. According to defendant, these complaints do not constitute reports of "wrongdoing" or "waste" as defined by the statute.

> West Virginia Code § 6C-1-3(a) states:
>
> No employer may discharge, threaten, or otherwise discriminate or retaliate against an employee by changing the employee's compensation, terms, conditions, location, or privileges of employment because the employee, acting on his or her own volition, or a person acting on behalf of or under the direction of the employee, makes a good faith report, or is about to report, verbally or in writing, to the employer or appropriate authority, an instance of wrongdoing or waste.

"Wrongdoing" means "a violation which is not of a merely technical or minimal nature of a federal or state statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." W.Va. Code § 6C-1-2(h). "Waste" means "an employer or employee's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from federal, state or political subdivision sources." Id. at § 6C-1-2(f).

The West Virginia Whistle-Blower claim is subject to the ***McDonnell Douglas*** burden-shifting framework first adopted by the United States Supreme Court in a Title VII context. ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792, 802–03 (1983). *See **Taylor v. W. Va. Dep't of Health & Hum. Res.**,* 237 W.Va. 549, 561, 788 S.E.2d 297, 307 (2016) (applying the ***McDonnell Douglas*** framework to a West Virginia Whistle-Blower Law claim) (citing ***Shepherdstown VFD v. W. Va. Human Rights Comm'n***, 172 W.Va. 627, 638, 309 S.E.2d 342, 353 (1983)).  This framework is best capsulized in ***Texas Department of Community Affairs v. Burdine***, 450 U.S. 248 (1981), where the United States Supreme Court stated:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." (citation omitted). Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. (citation omitted).

450 U.S. at 252–53 (citing ***McDonnell Douglas Corp.***, *supra*).

The Whistle-Blower Law provides: "it shall be a defense . . . if the defendant proves by a preponderance of the evidence that the action complained of occurred for separate and legitimate reasons, which are not merely pretexts." W.Va. Code § 6C–1–4(c).

To reach the jury, "the employee must offer sufficient evidence that the employer's explanation was pretextual to create an issue of fact." *Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 73, 479 S.E.2d 561, 583 (1996). The plaintiff must point to some direct or circumstantial evidence to show defendant's reasons are pretextual. *Id.* at 77, 479 S.E.2d at 587. "Pretext" means "the explanation offered by the defendant was not the reason that actually motivated the action taken against the plaintiff." *Id.* at 74, 479 S.E.2d at 584.

There are many ways for an employee to show an employer's provided reasoning was pretextual. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147–49 (2000). This Court, as well as others, has found that factors relevant to demonstrating pretext may include temporal proximity between the report and termination, inconsistencies in a defendant's reasoning, and similarity in decisionmakers at the time of the report and termination. *See Massaro v. Fairfax Cnty.*, 95 F.4th 895, 902 (4th Cir. 2024); *Roe v. Marshall Univ. Bd. of Governors*, 145 F.4th 561, 570 (4th Cir. 2025); *E.E.O.C. v. Sears Roebuck and Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001); *Adkins v. CSX Transp., Inc.*, 70 F.4th 785, 793–94 (4th Cir. 2023).

Defendant argues, with respect to plaintiff's anonymous complaint to the Ethics Commission regarding Ms. Howard's promotion of her sister, that such a report may constitute protected activity. [Doc. 19-1 at 15]. However, defendant argues that plaintiff cannot establish the remaining elements of her claim because she admitted she has no evidence that Ms. Howard or anyone else involved in the termination decision knew that she filed the complaint. [Id. at 15–16]. Defendant further notes that plaintiff was

terminated approximately eighteen (18) months after filing the complaint and contends that there is no evidence from which retaliatory motive may be inferred.  [Id. at 16].

Here, plaintiff making a report to the Ethics Commission[2] is almost always protected activity, so plaintiff has established that part of the *prima facie* case.

While plaintiff testified she had no direct proof Ms. Howard learned her identity, she also testified she did not believe her identity had been leaked, not that Ms. Howard had no inkling that an ethics complaint had been filed.  [Doc. 19-2 at 98:14–16 ("I don't know when Connie was informed of a complaint.  I don't know what conclusions she drew.  So I have nothing."). The record in this case includes, among other evidence, that (1) the Ethics Commission complaint was filed anonymously; (2) Ms. Howard testified that she believed the complaint came from a small pool of employees; and (3) Ms. Howard expressed concern that she did not know "who [plaintiff] might talk to next."  [Doc. 19-8 at 16]. A reasonable jury could conclude from these facts that Ms. Howard suspected plaintiff was the source of the complaint and viewed her as a continuing risk of further exposure, thereby creating a genuine dispute of material fact regarding employer awareness.

Viewed in the light most favorable to plaintiff, there is a genuine issue of material fact concerning employer awareness which militates strongly against the entry of summary judgment with respect to plaintiff's whistle blower claim regarding her ethics complaint.

Defendant likewise argues that plaintiff's communications with Betsy Frohnapfel do not support a whistleblower claim.  [Doc. 19-1 at 16–18].  According to defendant,

---

[2]The Ethics Commission is an "appropriate authority" within the meaning of West Virginia Code § 6C-1-2 because it is a "state . . . agency . . . having jurisdiction over . . . regulatory violations, professional conduct or ethics, or waste. . . ."  W.Va. Code § 6C-1-2(a).

Ms. Frohnapfel was not an "appropriate authority" under the Whistle-Blower Act because the County Commission lacked authority over the County Clerk's Office. Defendant further asserts that plaintiff admitted she knew Ms. Frohnapfel could not take action regarding the matters about which she complained. [Id. at 17 (citing [Doc. 19-2 at 108:15–23])]. Defendant also contends that plaintiff failed to identify any reports to Ms. Frohnapfel that qualify as reports of statutory "wrongdoing" or "waste" and has produced no evidence connecting any such reports to her termination. [Id. at 17–18].

Plaintiff disputes defendant's characterization of her communications with Ms. Frohnapfel as merely "*Mean Girls*-style text messages," arguing that the messages instead reported multiple instances of alleged governmental misconduct, including P-Card misuse, late IRS and retirement payments, improper budget revisions, and concerns about minors serving as election workers. [Doc. 20 at 13]. Plaintiff further contends that Ms. Frohnapfel qualified as an "appropriate authority" under the Act because many of these issues involved county-wide financial oversight rather than solely the County Clerk's Office. [Id.]. At a minimum, plaintiff argues that whether Ms. Frohnapfel constituted an "appropriate authority" presents a factual dispute that precludes summary judgment.

"Appropriate authority" is defined, in full, as

a federal, state, county or municipal government body, agency or organization having jurisdiction over criminal law enforcement, regulatory violations, professional conduct or ethics, or waste; or a member, officer, agent, representative or supervisory employee of the body, agency or organization. The term includes, but is not limited to, the office of the attorney general, the office of the state auditor, the commission on special

investigations, the Legislature and committees of the Legislature having the power and duty to investigate criminal law enforcement, regulatory violations, professional conduct or ethics, or waste.

W.Va. Code § 6C-1-2.

The Court concludes that summary judgment is not appropriate on the issue of whether plaintiff reported her concerns to an "appropriate authority" within the meaning of West Virginia Code § 6C-1-2 as it relates to her conversations with Betsy Frohnapfel. Although the interpretation of the statute presents a question of law, the record reflects genuine disputes of material fact regarding the nature and scope of County Administrator Frohnapfel's authority. Specifically, the parties dispute the extent of Frohnapfel's supervisory responsibilities, whether she exercised oversight over county financial matters, whether she possessed any authority with respect to the County Clerk's Office, and whether the matters reported by plaintiff fell within her jurisdiction or oversight. Resolution of these disputed factual issues is necessary before the Court can determine whether Ms. Frohnapfel qualifies as an "appropriate authority" under the statute. Viewing the evidence in the light most favorable to plaintiff, as the nonmoving party, the Court cannot conclude as a matter of law that plaintiff failed to report her concerns to an appropriate authority. Accordingly, defendant is not entitled to summary judgment on this basis.

Finally, defendant argues that even if plaintiff could establish a *prima facie* whistleblower claim, she cannot demonstrate that defendant's stated reasons for her termination were pretextual. [Doc. 19-1 at 18–20]. Defendant maintains that plaintiff was terminated because she issued a check exceeding $200,000 to pay a bill of approximately $12,000, inaccurately reported her attendance, and was generally a negative influence

12

within the office. [Id. at 18].   Defendant notes that plaintiff admitted making the check-writing error, acknowledged that such a mistake could justify termination, and agreed that falsifying time records would constitute a terminable offense. [Id. at 18–19]. Accordingly, defendant contends that plaintiff has failed to produce evidence demonstrating that defendant's proffered reasons for termination were false or a pretext for retaliation and that summary judgment should therefore be granted in defendant's favor.

In Response, plaintiff argues that defendant's proffered reasons for her termination are pretextual. [Doc. 20 at 14–15].  Specifically, plaintiff notes that the termination letter provided no reason for her discharge,[3] the check error was immediately corrected without financial loss, and the timekeeping issues had previously been addressed informally and were reasonably explained. [Id. at 14].  Plaintiff also points to evidence that she submitted a witness statement criticizing Ms. Howard's selective enforcement of the office's bullying policy shortly before her termination. [Id.].  Finally, plaintiff relies on statements allegedly made by County Administrator Frohnapfel expressing surprise at the termination, criticizing Ms. Howard's management of the office, and suggesting concern about the legitimacy of Howard's decision. [Id. at 14–15].  According to plaintiff, this evidence would permit a

---

[3]The discharge letter, signed by Ms. Howard, reads in full:
After much reflection, I am sorry to inform you that I have decided to terminate your employment in my office effective immediately.  If your [sic] have any items that belong to the Marshall County Clerk's office at home please return no later than 4 p.m. August 2, 2024.
Your final paycheck, including remaining PTO days will be issued at that time.

I wish you luck in your future endeavors[.].
[Doc. 19-7].

reasonable jury to conclude that defendant's stated reasons for the termination were a pretext for unlawful retaliation.

The Court likewise concludes that genuine issues of material fact preclude summary judgment on the issue of pretext. Although defendant has articulated legitimate, non-retaliatory reasons for plaintiff's termination, plaintiff has presented sufficient evidence from which a reasonable jury could conclude that those reasons are not the true reasons for the adverse employment action. Among other things, the termination letter identifies no reason for plaintiff's discharge; the record reflects that the check error cited by defendant was promptly corrected without financial loss; and plaintiff has presented evidence that the timekeeping issues had previously been addressed informally and that she provided an explanation for her practices. Plaintiff also relies on evidence that she submitted a witness statement critical of Ms. Howard's enforcement of the office's bullying policy shortly before her termination, as well as testimony concerning statements allegedly made by County Administrator Frohnapfel expressing surprise at the termination and criticizing Ms. Howard's management of the office. Viewed in the light most favorable to plaintiff, this evidence is sufficient to permit a reasonable jury to find that defendant's proffered reasons for plaintiff's termination were pretextual and that the actual motivation for the termination was unlawful retaliation. Accordingly, summary judgment is inappropriate on this issue.

In sum, summary judgment is not warranted on plaintiff's West Virginia Whistle-Blower claim.

## II.   Violation of 42 U.S.C. § 1983 (First Amendment Rights)

Although the Court concludes genuine disputes of material fact preclude summary judgment on plaintiff's whistleblower claim, that conclusion does not resolve plaintiff's § 1983 claim.   Unlike the Whistle-Blower Law, § 1983 does not impose liability simply because an employer allegedly retaliated against an employee.   Because plaintiff seeks to hold defendant liable for an alleged constitutional violation, she must also satisfy the municipal liability requirements established in *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978). Plaintiff has failed to do so.

Plaintiff asserts a claim under 42 U.S.C. § 1983, alleging that defendant violated her rights under the First Amendment by terminating her employment because of her political association.   *See* [Doc. 1-1 at ¶¶ 26–33].   Defendant moves for summary judgment, arguing that plaintiff has failed to produce sufficient evidence to establish municipal liability against the Marshall County Commission or to demonstrate that her alleged protected activity was a substantial or motivating factor in her termination.   The Court agrees.

Rather than identifying evidence that defendant exercised its authority, plaintiff argues that members of the County Commission and the County Administrator were aware of her complaints regarding Ms. Howard's conduct and failed to intervene, thereby ratifying retaliatory conduct or demonstrating deliberate indifference. [Id. at 8–9].   Even assuming the record supports plaintiff's assertions that she made complaints to County officials, such evidence is insufficient to establish municipal liability under § 1983.

*Monell* provides that "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be

15

unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. Critically, however, *Monell* also clarifies that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691.

Put differently, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

"A policy or custom for which a municipality may be held liable can arise in four ways:"

> (1) through an express policy, such as a written ordinance or regulation;
>
> (2) through the decisions of a person with final policymaking authority;
>
> (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." Id. at 217 (internal citations omitted).

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citations omitted).

Lastly, in order to succeed upon a *Monell* claim, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by*

*Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). In other words, the policy or custom must be the "moving force" behind the alleged constitutional violation, or it must be established that there is an "affirmative link" between the city's policy or custom and the "particular constitutional violation alleged." *See Monell*, 436 U.S. at 694; *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

As an initial matter, plaintiff has failed to produce evidence from which a reasonable jury could conclude that defendant exercised any authority over her termination. The undisputed record reflects that plaintiff was terminated by County Clerk Connie Howard. Plaintiff has not identified evidence that defendant participated in, directed, approved, or otherwise exercised its authority with respect to the decision to terminate her employment. Indeed, plaintiff does not meaningfully dispute that defendant itself played no role in the termination decision.

Rather than identifying evidence that defendant exercised its authority, plaintiff argues that members of the County Commission and the County Administrator were aware of her complaints regarding Ms. Howard's conduct and failed to intervene, thereby ratifying retaliatory conduct or demonstrating deliberate indifference. [Doc. 20 at 8–9]. Even assuming the record supports plaintiff's assertions that she made complaints to County officials, such evidence is insufficient to establish municipal liability under § 1983.

Plaintiff has not identified any official policy, longstanding custom, or decision by a final policymaker that caused the alleged constitutional deprivation. Nor has plaintiff produced evidence from which a reasonable jury could conclude that defendant itself exercised authority over the termination decision. Plaintiff's assertions regarding

17

"ratification" and "deliberate indifference" are unsupported by evidence demonstrating the existence of an official municipal policy or custom.    Plaintiff further claims that Ms. Frohnapfel advised her in 2022 to sue Ms. Howard if she was fired, and that somehow that advice "indicates that the Commission understood its co-employer role extended to protecting employees from politically motivated terminations." [Id. at 9].[4]    Plaintiff fails to create a genuine dispute of material fact.

Plaintiff likewise fails to identify any official policy, widespread custom, or practice of retaliating against employees because of their protected political association. *Earle v. City of Huntington*, 2017 WL 3189897, at *2 (S.D. W.Va. July 27, 2027) (Chambers, C.J.) ("At the summary judgment stage, the Court requires concrete evidence to support Plaintiff's claim to justify a jury trial on the issue.").

Evidence surrounding a single employment decision, without more, is insufficient to establish municipal liability under § 1983. At the summary judgment stage, plaintiff must produce "concrete evidence" to support her claim and justify submitting the issue to a jury. Plaintiff has failed to do so here. Accordingly, the Court finds that plaintiff cannot maintain a municipal liability claim against defendant under 42 U.S.C. § 1983.

Having concluded that plaintiff cannot establish municipal liability against defendant, the Court need not reach defendant's remaining arguments regarding the merits of plaintiff's First Amendment retaliation claim.

---

[4]This theory of the case is not plead anywhere in the Complaint.

18

III.    **Monetary Damages for State Law Claims**

Because the Court grants summary judgment in favor of defendant on Count II of plaintiff's Complaint, it need not address defendant's remaining argument concerning monetary damages.

**CONCLUSION**

For the foregoing reasons, Defendant Marshall County Commission's Motion for Summary Judgment [**Doc. 19**] is **GRANTED IN PART** and **DENIED IN PART**.  Summary judgment is **GRANTED** in favor of defendant on Count II of plaintiff's Complaint and is **DENIED** with respect to plaintiff's Whistle-Blower claim.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: July __7__ , 2026.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT COURT